**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

RODNEY POWELL,

      Plaintiff,

vs.                                                  Civ. No. 97-1178 WWD/RLP

DANNY CARTER, Individually and as a
member of the Hobbs Police Department;
HOBBS POLICE DEPARTMENT,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon Defendants' Motion for Summary Judgment, filed May 5, 1998 [71-1]; Defendants' Motion to Strike Plaintiff's Surreply to Defendants' Summary Judgment, filed June 10, 1998 [92-1]; Plaintiff's Motion for Summary Judgment, filed June 25, 1998 [98-1]; and Plaintiff's Motion for Appointment of Counsel, filed June 10, 1998 [94-1]. Plaintiff is proceeding *pro se* and is incarcerated.[1] Plaintiff brings claims against Defendants Officer Danny Carter and the City of Hobbs under § 1983, under the New Mexico Tort Claims Act, N.M.Stat.Ann. §§ 41-4-12 (injury for malicious prosecution and false imprisonment) and the N.M Const.art.II § 10.[2] Mr. Powell claims that he was falsely arrested and charged on June 14, 1995, by the Hobbs Police Department, with the robbery of a Fina Station in

---

[1] Plaintiff voluntarily agreed to the withdrawal of his attorney. [docket #65]. It is not clear on what charges he is presently incarcerated, since he was found not guilty at his criminal trial for the charges related to this case.

[2] Other Defendants and claims have been dismissed with prejudice. See Orders entered Jan. 28, 1998. Remaining Defendants in this action are Det. Danny Carter and the City of Hobbs.

Hobbs which occurred on June 10, 1995.  He claims that Defendants had no probable cause to arrest him because a store videotape of the robbery did not show Plaintiff as the robber of the store.  Following a jury trial six months later, Mr. Powell was acquitted.

I agree with Defendants that Plaintiff's surreply is not proper.  Nevertheless, in part due to his present *pro se* status, I will consider the surreply even though Plaintiff failed to follow local rules in filing the pleading.  D.N.M.LR-Civ. 7.6(b); see, e.g. Baer v. Terminix Int'l Co., 975 F.Supp. 1272, 1277 (D.Kan. 1997) (although it was court's practice to ignore surreplies filed without leave, court "indulged" plaintiff and considered his filing).

I summarily dispense with matters raised by Plaintiff which have no relevance to his present claim.  For example, the fact that the videotape was not used at his preliminary hearing does not bear upon Defendants' conduct in applying for an arrest warrant or carrying out the arrest.[3]  See Meade v. Grubbs, 841 F.2d 1512, 1527-27 (10th Cir. 1988) (affirmative link must be established between alleged constitutional deprivation and any conduct by defendant(s)).  Similarly, Plaintiff's acquittal at trial does not fortify his allegations of malicious prosecution.[4]  See Beard, 24 F.3d at 113 (later judicial determination that plaintiff should not have been arrested does not negate the validity of an arrest).  Also, references to Defendants' alleged failure in duty of care toward Plaintiff are construed as alleged acts of negligence, which are not cognizable as causes of action either under § 1983 or state claims under the Tort Claims Act.  See Davidson v.

---

[3] Plaintiff himself states that his request for the videotape to be shown was refused by the district attorney and the magistrate court judge.  Surreply at 2.

[4] Although Plaintiff's innocence of the charge contained in the warrant is relevant to his state claim of malicious prosecution, a finding of probable cause for arrest would erode any basis for both his state and federal claims.  See Zamora v. Creamland Dairies, Inc., 106 N.M. 628, 632 (Ct.App. 1987); see also Order entered Jan. 28, 1998, at 8 n.6 [docket #47].

Cannon, 474 U.S. 344 (1986) (merely negligent acts or omissions will not support a cause of action under § 1983); Blea v.City of Espanola, 117 N.M. 217, 219 (Ct.App. 1994) (simple negligence in the performance of a law enforcement officer's duty does not amount to commission of one of the torts listed in the Act).

*Legal Standard for Constitutional Claim*

In analyzing qualified immunity claims, we first ask if a plaintiff has asserted the violation of a constitutional right at all, and then assess whether that right was clearly established at the time of a defendant's actions. Clanton v. Cooper, 129 F.3d 1147 (10th Cir.1997) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991). Once the plaintiff meets this burden, a defendant assumes the usual summary judgment movant's burden of showing that no material issues of fact remain as to whether his actions were "objectively reasonable" in light of the law and the information he possessed at the time. Moya, 35 F.3d 501, 503 (10th Cir. 1994), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). An issue of material fact is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." Id.

*Application of Legal Standard*

Plaintiff's § 1983 claim rests on allegations of malicious prosecution where Defendants intentionally omitted information (the videotape) which was allegedly exculpatory and which would have precluded probable cause for his arrest. Because lack of probable cause to initiate criminal proceedings is an essential element for a malicious prosecution claim, Plaintiff's allegations, taken as true, form a basis for a violation of Plaintiff's rights under the Fourth Amendment. See Wolford v. Lasater, 78 F.3d 484, 488 (10th Cir. 1996); Albright v. Oliver, 114 S.Ct. 807 (1994) (malicious prosecution and false arrest are analyzed under Fourth Amendment

3

standard).  Also, at the time of the incidents giving rise to this action, the law was clearly established that an arrest is valid and does not violate the Fourth Amendment if the warrant underlying it was supported by probable cause at the time of its issuance.  Beard et al. v. City of Northglenn, Colo., 24 F.3d 110, 114 (10th Cir. 1994); Baker v. McCollan, 443 U.S. 137, 140 (1979) (an arrest may be made only on probable cause).  This "holds true even if later events establish that the target of the warrant should not have been arrested."  Beard, 24 F.3d at 114.  Thus, Plaintiff has made the required showings following assertion of a qualified immunity defense.  Nevertheless, Defendants can prevail in their summary judgment motion if they can show that there is no genuine issue of material fact that Defendant Carter's conduct in obtaining the arrest warrant was objectively reasonable.  Plaintiff contends that Defendant Carter knew or should have known that no probable cause existed to arrest him.  An examination of the relevant factual events indicates otherwise.

   On June 10, 1995, Eric Capps, a clerk working at the FINA Truck Stop, called the Hobbs police in to investigate a robbery which had occurred.  Capps told Detective Carter, who had been dispatched to investigate, that the store had been robbed by one white male and one black male. Capps stated that the white male bought a pack of Big Red gum, and when Capps opened the register to make change, the black male reached across the counter and struck at Capps' hands with a rusty pipe.  Defts' Brf, Ex. A, Carter Aff; Pltff's Surreply, Ex. B.  Capps later made a positive photo identification of the white male, but was not able to identify the black male from a photo lineup.  Pltff's Surreply, Ex. D.

   According to Carter, on viewing the store videotape afterwards, he also saw two

4

individuals, one white male and one black male.[5]  Because the two store cameras switched from taking pictures from the front to the back of the store, and because of his placement at the check-out counter, the white male was much more visible than the black male, who stayed near a corner area near the front of the store.  Pltff's Surreply, Exs. A & C.  The front camera showed the black offender's jacket and the metal pipe hitting the cash register.  The camera at the back of the store revealed his back but not his face.  Carter Aff., ¶ 5.

Several days later, Detective Gonzales, also with the Hobbs Police Department, received information from a sheriff's deputy in Lea County that a white male and a black male had been involved in another robbery within a few days of the FINA robbery, and that the individual who had reported the robbery knew both offenders by the names of Chad Dean and Rodney Powell.  Defts' Brf., Ex. B, Gonzales Aff.  Detective Gonzales relayed this information to Detective Carter.  When Carter went to Dean's residence on June 13, 1995, accompanied by Det. Gonzales and another officer, he recognized Dean as the white male in the video.  After being advised of his Miranda rights, Dean agreed to go to the Hobbs Police Department to give a statement.  Carter Aff., ¶¶ 7,8.  Dean confessed that he and Powell had robbed the FINA Truck Stop on June 10th.  Carter Aff., ¶ 10; Defts' Ex. C at 11; Pltff's Surreply, Ex. D (narr. supplement by Carter).  Dean's statement includes facts about the incident which track Capps' description of events, e.g., the white male buying gum and the black offender hitting the register with a steel bar.  Pltff's Ex. D.

Carter then completed warrants for the arrest of both Plaintiff and Chad Dean.  Dean was then taken into custody based upon the warrant, and another officer arrested Powell the following

---

[5] The foregoing facts are from the narrative supplement by Defendant Carter regarding Capps' report, which is included in Plaintiff's exhibits to his surreply, Ex. C.  The videotape itself has not been found.  See discussion, below, on Plaintiff's summary judgment motion.

day.[6]

Powell's insistence that no probable cause existed to arrest him because the videotape did not clearly identify the second individual as black, or himself as the other offender indicates that he misses a crucial point in the inquiry. From the evidence submitted outside the pleadings, it is clear that Carter did not base his application for a warrant solely on the videotape, but relied on Eric Capps' report, Detective Gonzales' statement and Chad Dean's confession. Defts' Brf, Ex. A, Carter Aff., ¶ 11. In these circumstances, where there is no dispute that the videotape failed to unequivocally identify the Plaintiff as the second offender and where it therefore could not, and was not, relied on to support the application for an arrest warrant, Plaintiff creates the proverbial "tempest in a teapot" over an undisputed issue of fact.

Plaintiff does not present any evidence other than conclusory allegations rebutting the presumption that Carter acted reasonably in relying on either Capps' report or Detective Gonzales' statement. The reliability of information received from an ordinary citizen like Capps is presumed. See Karr v. Smith, 774 F.2d 1029, 1032 (10th Cir. 1983); Harris v. Evan, 795 F.Supp. 1060, 1064 (D.Kan. 1992). Further, without any evidence showing that Capps was not telling the truth (and Plaintiff fails to demonstrate such evidence other than with unsupported allegation), Carter was justified in assuming the reliability of Detective Gonzales' information. Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997) (officer may rely on information furnished by other law enforcement officials to establish reasonable suspicion and probable cause for arrest); Harris

---

[6] The fact that Carter prepared the warrant, but did not actually arrest Powell is of no consequence here, since a Fourth Amendment inquiry still applies to Carter's role in the arrest. See Franks v. Delaware, 438 U.S. 154, 155-56 (1978)(it is a violation of the Fourth Amendment for an arrest warrant affiant to "knowingly, or with reckless disregard for the truth, include false statements in the affidavit.")

at 1064 (reliability of information established where the police officer initiating the chain of communication received his information from some person who it seems reasonable to believe is telling the truth).

The fact that the underlying criminal case resulted in a case of mistaken identity does not vitiate the integrity of the arrest or the basis for the warrant.  Plaintiff makes much of the fact that Capps identified the black offender as having moles or "dark spots" on his face, and "dread locks" when in reality he is "clean shaven" and sports a goatee moustache.  The proper focus here is whether the warrant issued for Plaintiff's arrest was constitutionally sufficient when it was *sought*. Beard, 24 F.3d at 113 (emphasis added).  It is undisputed that the videotape did not show the second offender to be clearly visible, and Capps' description of the individual is not particularly at odds with Plaintiff's own self-description.[7]  Thus, Carter neither possessed nor ignored any information which would have rendered it unreasonable to prepare a warrant for Plaintiff's arest. See Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996) (holding that district court's dismissal of plaintiff's claims was correct as none of the material omitted from the warrant affidavit was "directly exculpatory" or would have vitiated the probable cause for the arrest warrant).[8]

---

[7] Capps described the black offender as 25 years of age, 65 inches tall, medium build, dark complected with "moles" or dark spots on his face, with dread locks about 2 to 3 inches long, wearing a dark colored coat.  Pltff's Surreply, Ex. A, C.

[8] The present case is easily distinguished from a recent Tenth Circuit case which affirmed the denial of qualified immunity for defendant officers and which also involved a store videotape. In Baptiste v. J.C.Penney Co., Inc., et al., 1998 WL 348150 (10th Cir. Colo., Jun.30, 1998), the court held that a dispute of fact existed regarding probable cause for the detention and search of a woman who was suspected of shoplifting.  In that case, however, the officers relied solely on the statement of the store security guard in proceeding with the search, even though a readily available store videotape clearly showed that the woman did not put any stolen merchandise in her purse and the woman provided the officers with store receipts for all merchandise retrieved from her purse and on her person.

7

Similarly, Dean's recanting at trial his statements concerning Powell's participation in the robbery does not render Defendant Carter's conduct unreasonable unless Carter knew that the information he was given was "false and inaccurate." Resp. at 2. Contrary to Plaintiff's assertions, I find no evidence at all to suggest either that Carter had reason to suspect the genuineness of any statements made or that he exhibited a reckless disregard for the truth. Cmp. Beard, 24 F.3d at 115 (holding officers immune from liability on arrestee's malicious prosecution claim arising from mistaken arrest for fraud scheme perpetrated by individual impersonating arrestee and where there was no showing of recklessness on part of officer).

Probable cause exists "if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." Romero v. Fay, 45 F.3d. 1472, 1475 (10th Cir. 1995). Viewing Carter's conduct in preparing the warrant based on Capps's report, Dean's confession and the statements from Det. Gonzales, I find that no reasonable juror could return a verdict in Plaintiff's favor because the undisputed facts reveal that there was sufficient and reasonable information to believe that Plaintiff had committed the crime with which he was charged. Plaintiff presents no dispute of material facts which require this case to proceed to trial, even when the record is viewed with all its inferences in the light most favorable to Plaintiff, which I am required to do. See Langley v. Adams County, Colo., 987 F.2d 1473, 1476 (10th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). Accordingly, summary judgment is granted to Defendant Carter on Plaintiff's § 1983 claim.

*Claims Against the City of Hobbs*

Plaintiff's claims against the City of Hobbs should be dismissed as well. A city may not

8

be held liable when there has been no underlying constitutional violation by one of its employees. Hinton v. City of Elwood, 997 F.2d 774, 782(10th Cir. 1993). Therefore, Plaintiff's claims against the City of Hobbs are dismissed with prejudice.

***State Claims Under the N.M. Tort Claims Act & the N.M. Constitution***

Having established that probable cause existed for Plaintiff's warrant and his arrest, Plaintiff's other claims which are rooted in the same theory fall away. The state claim of malicious prosecution, brought here under the Tort Claims Act, is premised on a lack of probable cause. Zamora v. Creamland Dairies, Inc., 106 N.M. 628, 632 (Ct.App. 1987). The existence of probable cause supporting Powell's arrest also undermines Plaintiff's false imprisonment claim which requires a showing of unlawful confinement or restraint by the Defendants. See Mendoza v. K-Mart, Inc., 587 F.2d 1052, 1058 (10th Cir. 1978). Requirement of a "written showing of probable cause" disposes of the state constitutional claim. N.M.Const. Art.2, § 10.[9] Therefore, Plaintiff's state claims are dismissed with prejudice.

***Other Pending Motions***

Plaintiff's motion for summary judgment, filed June 25, 1998 [98-1], essentially alleges that Defendants are in possession of the store videotape and have intentionally refused to produce it. The motion has no merit. The documents which Plaintiff attaches as exhibits to his brief only promotes Defendants' position that there has never been any effort to protect or withhold the tape, that the search for the missing videotape was fruitless and that it may have been destroyed

---

[9] As alternative grounds for dismissal of Plaintiff's state claims, Defendants contend that required notice was never properly or timely filed. See N.M.S.A. 1978, § 41-4-16(A). Plaintiff does not dispute this, and I need not address this issue given that these claims are dismissed on the merits.

pursuant to agency procedure.  At one time the tape was returned to Defendant Carter's custody and placed in a recycling cabinet, but this was only after the tape was used at Plaintiff's criminal trial and more than a year before Plaintiff filed this present action in state court, which was subsequently removed.  Pltff's Brf, Sum.J., Exs. A,B,& C.   Further, given the neutral impact of the videotape on a finding of probable cause, Plaintiff's allegations are pointless.   Plaintiff's motion for summary judgment is therefore denied.

Finally, in light of the case's present disposition, I am denying Plaintiff's motion for appointment of counsel, filed June 10, 1998 [94-1].

Now, Therefore,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment **[71-1]** is hereby **granted** and that all of Plaintiff's claims against Defendants are dismissed with prejudice in their entirety;

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Plaintiff's Surreply to Defendants' Summary Judgment **[92-1]** is hereby **denied**;

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment **[98-1]** is hereby **denied**;

**IT IS FINALLY ORDERED** that Plaintiff's Motion for Appointment of Counsel **[94-1]** is hereby **denied**.

A Judgment in accordance with this Opinion shall be entered.

UNITED STATES MAGISTRATE JUDGE